Our third case this morning is Gabb v. Wexford Health Sources, Case No. 18-2351. Ms. Langston, may it please the court. This is a case about a man with a degenerative arthritis condition who received a leave, a muscle relaxant, and a back brace for an almost two-year period despite 22 complaints that the medications were not working. This is a case that should go to the jury, and the magistrate judge agreed. Today I'd like to discuss, one, why the defendants were deliberately indifferent, and two, why Mr. Gabb suffered harm. To the first point, looking at Dr. Koh's interactions with Mr. Gabb for almost his two-year period, he doggedly persisted in the same course of treatment despite Mr. Gabb's repeated complaints that he had no relief. Dr. Koh prescribed him naproxen, which is essentially a leave, Roboxen, a muscle relaxant, and a back brace. None of these provided Mr. Gabb any relief. Physical therapy also. Physical therapy also, yes. Yes, Your Honor. Standard treatments for back problems. Yes, Your Honor. Excepted conservative treatment before something invasive would be tried. Yes, Your Honor. However, in this case, it was a two-year period of kind of those same treatments that provided no relief. Right, and we have no medical testimony that this was outside accepted medical norms, which would only achieve, even if that testimony existed, perhaps a negligence question for the jury. But we're in the domain of deliberate indifference, which is a much higher standard. Correct, Your Honor. We don't necessarily have expert testimony in this case. However, we have Dr. Koh saying that there were better treatments available. Did he ever say what better treatments? He didn't specifically say to Mr. Gabb. Did anybody ever ask him? I don't believe, Your Honor, that anyone asked him what better treatments were available. Dr. Koh did testify that the additional treatments could be a corticosteroid shot, for example, or a referral to a specialist. But in this case, he didn't prescribe any of those things. Well, he could have said something as simple as, well, if he'd go to a chiropractor, he might be able to fix it. Yes, Your Honor. He didn't say that in this case. All he told Mr. Gabb was that there were better treatments available, but Wexford wouldn't provide them due to cost and that Wexford doesn't run a pain clinic. So at the outset, I'd like to distinguish this case from Piles, which the district court relied on. So in the Piles v. Fahim case, the inmate injured his back. He was prescribed ibuprofen, then a muscle relaxer, so similar to this case. But when those didn't work, he was prescribed prescription painkillers and then a corticosteroid. This court found that that was not deliberate indifference because the physician responded to the inmate's complaints of continued pain by prescribing new medications. Here, Mr. Gabb never got past the muscle relaxer and ibuprofen stage, if you will. He was not prescribed prescription painkillers. He wasn't prescribed corticosteroid. In fact, Dr. Koh said there were better treatments available, which goes to his subjective awareness of insufficient care, despite not prescribing him any new treatments. I think this court's decision in Berry is actually very instructive, Berry v. Peterman. In that case, an inmate—and this is a case where the court did find that summary judgment was inappropriate—the inmate suffered a toothache, and he was only prescribed Oprith counterpain medications for a two-month period until he received a root canal. Well, this court found that his steady complaints of pain indicated that this two-month delay unreasonably prolonged his suffering. Well, in this case, we have almost a two-year delay in Mr. Gabb's suffering and pain without any relief, and nothing was done. Now, I would like to also talk about Nurse Kimmel's interactions with Mr. Gabb. Before we do that, it seems to me that different medical conditions might require a different time span of watching and waiting. This was a fairly low-grade back pain. He was being treated. He was being watched. Dr. Koh never said he wouldn't go any further. He wasn't going any further now, that's for sure. He was using the prescribed medications. Now, he never said he would never go further, did he? Your Honor, what Dr. Koh said was that there were better treatments available and that he wasn't going to prescribe them to Mr. Gabb. And that's the evidence that we have in the record that a reasonable jury can look at and see that Dr. Koh knew that these treatments were ineffective. Did the plaintiff ever indicate there's no evidence of what those treatments might be? Is that in the record? No, there's no evidence of what those treatments might be. All Dr. Koh said was that there were better treatments available. Okay. And the plaintiff didn't attempt to show what those treatments might be or why those treatments might be indicated at the particular stage he was at a treatment? No, Your Honor. Mr. Gabb just talked about the fact that Dr. Koh told him there were better treatments available. The treatments he was receiving for this period weren't effective. How are you going to stop them? Every time a prisoner comes in and says, I want a new medication, I've been on this one too long and it isn't working, and the doctor says no. Are we going to have a case? Is that a genuine issue, a triable fact? No, Your Honor, but I don't think that's what we have in this case. In this case, we have someone who complained 22 times that these medications weren't effective. So all you've got to be is the squeaky wheel. The squeaky wheel is going to get the truck. Well, not necessarily because we also have Dr. Koh's statement saying that there were better treatments available in the face of Mr. Gabb's repeated complaints that he wasn't receiving any effective treatment and was still in continued pain. So I think both of those working together make this a unique case that should have survived summary judgment, as the magistrate judge agreed. Well, it seems that Dr. Koh didn't know how or wasn't capable of these other remedies, and you had to go outside to get them. And that's the impression I got from looking at your stuff, and that he wasn't saying, oh, yeah, I know how to do it, but I'm just not going to. Instead, he said that his capacity, you can go elsewhere and maybe get something better, and I'm sure it's not whatever it might be. It may be some other kind of a clinic, some other type of therapy that you've got to go somewhere else. It could be expensive. But that seems to be what you're arguing, is that he said you can get this elsewhere, and they weren't willing to do that. And therefore, you win. Well, Your Honor, it's not quite that we're saying that Dr. Koh said that treatments could be done elsewhere, he can get treatment elsewhere. Dr. Koh testified that he's given corticosteroid shots, for example, in the back. That could be a treatment, that's something that he could essentially prescribe to an inmate at Wexford. The difference is that he said there were better treatments available, but due to cost, he couldn't provide those treatments to him. So it wasn't necessarily because the treatments were outside of the facility. Was the cost of paying somebody else besides somebody above his pay grade? I don't want to joke about it, but I mean somebody who was better than he was, or a specialist somewhere else who was going to cost more. Your Honor, I don't necessarily think it was just a specialist, though, that he was discussing. I think he could have also been alluding to, and the jury can take this under, you know, this is a question for the jury, whether he was alluding to better treatments, for example, a prescription painkiller or a corticosteroid shot, which those are things that he said, that Dr. Koh said in his testimony, he's able to give. He has that kind of expertise to be able to prescribe that kind of medication, but due to cost, he couldn't provide these better treatments. Now, quickly moving to McNerney. He also did say that he had, on other occasions, though, gone to Wexford to receive approval to give other treatments, right? Correct, Your Honor, but he did not in this case. Yeah, so he didn't say, I won't go to Wexford or anything of that nature. No, he said that Wexford wouldn't pay for the better treatments. And a reasonable jury can infer that that means that he wasn't willing or he wasn't, even if he were willing to go to Wexford for money for better treatments, they would deny it. And I do think that, I mean, that goes to the cost point. I mean, and this is why we have Wexford in the suit as well, because Dr. Koh at the time was the medical director of Lawrence, when he made these statements about cost, et cetera. So a jury could likely infer that he knew about their policies. Now, moving quickly back to Nurse Kimmel. Their entire argument is based on her testimony that she did not know about his back pain. On page 20 of their brief, they say, quote, at no time did Gabb complain of or otherwise mention back pain, end quote. And they cite to Nurse Kimmel's brief. However, that's the improper standard at summary judgment, because Mr. Gabb testified that on both occasions he saw Nurse Kimmel, he told her about the back pain. He asked her to do something. And under Perez, a nurse can simply not do nothing when presented with an objectively serious medical condition like Mr. Gabb's back pain. And that's exactly what she did. And also, just to make a point about the basketball situation, Mr. Gabb testified that he played basketball because Dr. Koh prescribed him exercise. So per that direction, he played basketball a couple of times. Had he not complied with these directives by Dr. Koh, the defendants would be standing here arguing that he didn't do everything that Dr. Koh told him to do, which is why he continued to have back pain. And again, those are questions that can go to a reasonable jury as the magistrate judge found. Unless the court has any questions, we ask, I will cede the rest of my time to rebuttal, and we ask the court to do reverse. Thank you. Thank you. Mr. Sandstein. Thank you, Your Honor. Good morning, and may it please the court. You know, there were actually 16 things that Dr. Koh did to treat Mr. Gabb, and that was discussed by Judge Gilbert in his opinion in this case, and I'm not going to list them all, but I'll just name a few. There were numerous physical examinations of the back and abdomen for tenderness and swelling. There was a neurological examination of the legs. There was a prescription for Motrin. There were spine X-rays. There was a straight leg raising test. There were several adjustments to the back brace. There was a thoracic spine X-ray, prescription for Roboxin. Those are just a few. There are a total of 16 that Judge Gilbert talks about. There were four visits at issue here, and each time Dr. Koh listened to the patient and tried various things. Now, there are complaints about the naproxen, for example, but yet we know that the patient is still taking naproxen. After Dr. Koh left the institution, Mr. Gabb continued taking the naproxen. That was in the deposition of Mr. Gabb. If there's this problem with the naproxen, why is he still taking it after Dr. Koh left the institution? This court has said many times some very important things that apply in this case. In the Norwood case, which we cite on page 18 of our brief, medical professionals cannot guarantee pain-free lives for their patients. Let's suppose that Mr. Gabb had depression, for example, and he goes in, seeks care for depression, and after two years he says he's still suffering from depression. Well, unfortunately, Mr. Gabb has had back pain since he was a child, and as this court said, you can't guarantee a patient pain-free lives. You can't do that in an institution. You can't do that in a hospital. This court also said in the Arnett v. Webster case, which we cite on page 17 of our brief, that although prescribing pain medication may not have been effective, without some evidence such as expert opinion testimony showing the treatment was so inadequate it demonstrated an absence of professional judgment, plaintiffs cannot succeed on summary judgment. As was pointed out by at least a couple of the judges on this panel earlier during questioning of appellant's counsel, there's no expert testimony in this case. There's a statement in the record about perhaps a referral to a specialist being available. There's no indication of what would have happened or that that would have made a difference. We don't have anything like that in the record, so we're going on speculation here. Something else that is important that this court said in the Snipes case, which we cite on page 15 of our brief, is that a prisoner's dissatisfaction with the physician's prescribed course of treatment does not result in a constitutional violation unless the treatment is so blatantly inappropriate as to evidence intentional mistreatment. Again, Dr. Koh did at least 16 different things on the four visits to try to see if he could help Mr. Gabb. He prescribed the Roboxin. There are complaints about the Roboxin in appellant's brief, but yet Mr. Gabb said that he liked the Roboxin because it helped him sleep. So which is it? Is the Roboxin a problem or is it a good thing? Well, according to Mr. Gabb, it's helping him with his sleep, and so Dr. Koh gave him the Roboxin. And as for the Naproxen, again, Mr. Gabb continued to take the Naproxen after Dr. Koh left the institution. So I don't see a problem there. This is not a dogged pursuit of the same type of treatment endlessly. That's not what happened here. Dr. Koh listened and tried various things. In terms of the case as a whole, I guess this doesn't approach the sort of situation where even negligence is involved. I mean, if this were a case that you take outside the institution, I don't see how Dr. Koh or Nurse Kimmel can be said to be acting even negligently here. They're listening to the patient. They're trying to do different things. And at the end of the day, there's no expert testimony here that anything happened other than Mr. Gabb is still suffering from back pain. And, again, if you made it depression instead of back pain, no one is saying that the back pain that he suffered since childhood is going to go away. It may not have improved, but, again, in the Arnett case from this court, the fact that a pain medication is not effective is not something that you can turn around and blame the doctor for. There's one other case I want to refer the court's attention to. I think it's very important, the Salazar case, which we cite at page 13 of our brief, that deliberate indifference is a synonym for intentional or criminally reckless conduct. And I have a hard time seeing how Nurse Kimmel and Dr. Koh here are being criminally reckless, much less intentional in their activities of trying to harm Mr. Gabb. And so unless the court has any other questions, we simply ask that the court affirm Judge Gilbert's so well-reasoned opinion in this case. Well, as far as the nurse, I think there's probably, you know, you make the point, she may have a different attitude or something like that, but when it gets to the doctor, the only question it raises for me is that he said that there's better treatment elsewhere. Isn't that kind of what he says? That was the testimony that he could have referred him to a specialist. And so that raises the question, well, what is it? You know, I'm not joking when I say, well, he could have gone to a chiropractor or somebody else who does stuff. We all know different people. I can even refer to one of my kids. It has some back pain from injury in football and things. You can go to a chiropractor and whatever, and it lives with it. It's not real serious, et cetera. But the implication is that maybe he could go somewhere else. They just don't want to pay for it, or Wexford doesn't want to pay for it. That's the only question I have, because this is otherwise you can say, yeah, he did, what is it, 16 treatments, I think you said? At least 16 that were referred to. So they're working with the guy. They're giving him this, that. Personally, I always worry about painkillers because now you're just covering up the problem. As opposed to curing it. Maybe there isn't a cure, or maybe there's always something. But back pain is a common gripe with a lot of people. It's maybe because they don't stand up straight or something. But seriously, the only thing that bothers me is the fact that he said you can get better stuff, some better treatment somewhere else, and we don't know what that is. I understand your concern, Your Honor. I think if there were evidence in the record that indicated what that was, and that perhaps after Dr. Koh left the institution, Mr. Gabb went and got some additional care from some other physician, and that it made a difference of somehow, we might have an issue here. But we don't have that. Was there another doctor that took over his treatment? That's my understanding, yes. And that doctor continued to prescribe the naproxen, and as of the time of Mr. Gabb's deposition, he was still taking the naproxen, which is one of the medications in the briefing that's complained about. So all we know from the record is that Dr. Koh left, another physician took over, that physician continued to prescribe the naproxen, and as of December 2017 when the deposition was taken, Mr. Gabb, he was on the naproxen and was taking it, and he didn't complain about it. So there's nothing in the record to indicate what any other care would have been. There's no expert that comes forward and says, yeah, you know what, if he had gone out and done this, boy, it would have made a big difference. We just don't have that, so we're on speculation. And when it has to rise to the level of criminal recklessness, I just don't think the record is there to take away the summary judgment. And the objective clinical evidence is that he was suffering from mild degenerative disease. That's according to the x-rays? That's correct, Your Honor. And the doctor thought the course of treatment was appropriate and nothing more aggressive was necessary? That's right. He thought that the care that he was prescribing and some of the other things that he was trying, such as looking at x-rays, working with the back brace, some of the other things that Judge Gilbert talks about would be ways of trying to see if there was something more he could do for the patient. And he certainly made the effort, and so did Nurse Kimmel. We'd ask that the summary judgment be affirmed. Where is he now? I don't know, Your Honor. Thank you, Your Honor. Thank you. Ms. Langston, you've got very little time left. You have some rebuttal. I'll give you a minute so you can sum up your case. Thank you, Your Honor. Just very quickly to that point, Mr. Gabb was in severe pain. The treatments that he speaks of were diagnostic in nature, physical examinations, et cetera. Those weren't treatment for his back pain. We're talking about treatment in this case. The fact that he's still on naproxen goes to the fact that Wexford isn't going to pay for these better medical conditions. And Dr. Koh said in his testimony that the better medical treatments would be cortisone shots or a specialist. And even the point about Roboxen helping with his sleep, that doesn't go to his back pain. We're still talking about the treatment of back pain, which is important for us all to remember. And so in conclusion, there's more than enough evidence to find that the defendants were deliberately indifferent. Like the magistrate judge found, a jury should decide. For these reasons, we ask the court to reverse. Thank you. All right. Our thanks to both counsel. The case was taken under advisement. And Ms. Langston, you and your colleagues undertook this representation pro bono, I take it? You have the thanks of the court for your work on behalf of your client and the court.